Next question is U.S. v. Williams. Good morning, Your Honor. Good morning. May it please the Court, my name is Frederick Ulrich. I'm an assistant federal public defender in the Middle District of Pennsylvania, and I represent the appellant, Mr. Williams in this matter, and I'd like to reserve two minutes of my time for rebuttal. Okay. Addressing first the government's waiver argument with respect to the underlying sentencing claim, in this particular case we had a new judge, a different prosecutor, and a different defense attorney. All of them, including the probation office, appear to have been relying upon the judgment in this case. Yeah, but it's more than that, because the defense counsel was specifically asked about the number of terms of supervised release and specifically said yes. There's no doubt that she agreed with what the judge asked her, whether there was one, two, three. In fact, there's quite a bit of confusion, at least in my own review of the record, as to exactly how many terms of supervised release there were. If you look at the dispositional report, you'll notice that it suggests that there were three, and then at the time of the hearing they end up with just two, and the judgment reflects eight. So I'm not really sure where all the mistakes lie, one on each of the eight counts. But our position would be it's pretty clear that nobody had the sentencing transcript. It wasn't available until I ordered it. So everybody was working off of a judgment that was different than what was in the sentencing transcript. You can't have a valid waiver if you don't know what you're waiving. It wouldn't be knowing or intelligent. What it is is a plain error review. So she simply didn't assert what would have been an error at the time that it occurred. Turning to the underlying issue, whether there was more than one term of supervised release imposed, the court's decision in Dillon indicated that a term is defined just as it's commonly understood and plainly means one. The court also said that it's not ambiguous. And, indeed, the one distinguishing factor between this case and Dillon is in Dillon they were statutorily required to impose multiple terms of supervised release, and yet the court upheld the sentence of one. Here there was no statutory requirement of multiple terms of supervised release. Does it matter that there were, in this context, multiple charges? I mean, this is sort of an accumulation of, I guess, different cases, if you will. In that sense, it's a little bit different than Dillon. It is. It appears I'm not totally familiar with what the state charges were, but apparently there was an overlapping state prosecution. Well, actually, there was an overlapping state parole violation. I think he was held on the state parole detainer at the time he came in initially, and there must have been an overlapping state prosecution as well. But, in any event, that difference, plus the fact that it appears that the judge newcomer, when he sentenced him, simply just took the five-year term of supervised release from Paragraph 92 of the pre-sentence report, that's what it says, and simply applied it to the sentence without making any distinction. The fact that the judgment is different than what was orally pronounced in court doesn't make the pronouncement in court ambiguous. In fact, this court, as well as a number of other circuits, have said that the oral pronouncement in court controls them for good reason. These judgments are, in the middle district, frequently prepared in advance by the Probation Department. They're riddled oftentimes with typographical errors and other errors, or, in this case, prepared and filed four days later. So is your argument that we should focus just solely on what happened in court, and if what happened in court is ambiguous, then that's a problem? But just because what seemed fairly clear in court may conflict with another document, that doesn't make it ambiguous. Is that right? That would be our argument. In fact, if you look at the judgment itself, there's good reason not to rely on it. The judgments in both of these cases indicate that five-year terms of supervised release were imposed on every single count. Well, that's legally impossible. These counts were Class C and D felonies. A three-year term of supervised release was all that should have been imposed. In fact, counsel probably should have clarified that at the original sentencing, but didn't. Turning to the Fifth Amendment claim. Before you get there, if we agree with you and vacate and remand, we don't have to get to that Fifth Amendment argument, do we? No, we don't. Okay. The Fifth Amendment claim, we recognize, obviously, this is a very difficult area, very hard to draw lines. The dissenting opinion in some of the Supreme Court cases have indicated as much. But Mr. Williams' case is different at least in three respects from most of the cases that address this area. One, there's no question that there was a looming federal prosecution. In fact, he was a grand jury target at the time he came in for his revocation of supervised release. And, in fact, right now, he's pending prosecution for those very charges. Secondly, this wasn't just simply a case where the judge mentioned remorse in passing. It was repeatedly brought up during the course of the proceeding with particular emphasis, even echoically. And then on top of that, the judge ultimately sentenced him not to a guideline sentence, not to an upper-end guideline sentence, and not even just to a consecutive sentence, but imposed a statutory maximum on each of these. He was upset. And ran them consecutively. The judge was very upset. And for good reason. I don't dispute the fact that he had valid reasons for being upset with the way Mr. Williams apparently took advantage of the system. But also, here there wasn't even a mention of Fifth Amendment privilege until it was all done pretty much. That is correct. And I believe that in this case, the fact that he asserted his right to remain silent without mentioning the Fifth Amendment, there's a colloquy between he and counsel that comes up at the end of the proceeding where they do talk about the Fifth Amendment. And the government gives them an opportunity to then go back and address the court. But the problem in this particular instance is once he starts talking about contrition, once he starts expressing remorse, and the detective that's investigating these other robberies is sitting in the courtroom, he's not going to be able to turn around. Who is? I believe the detective. Who's sitting in the courtroom? The detective. The police officer that was investigating. At least that's what it says in the record, in the transcript. The detective was in the courtroom. I think it would make it very difficult. It's pretty clear, at least from my standpoint, that the money involved in this case must have been coming in some part from these robberies that were occurring. So it's going to be a little difficult for Mr. Williams. But the case is, no question has been asked by which he must inculpate himself. He's asked if he wants an opportunity to show contrition, grovel before the court or whatever else in order to get a break. And he gives him that shake. And he says, my counsel doesn't want me to talk at all because there's some cops here. Would it not have been advisable to have allowed him to do the former, and if the latter is asked, to invoke the amendment? He could have done it that way, although true remorse is going to come from expression of consciousness of guilt. Otherwise, it's not really true. I sat in criminal court for 10 years. True remorse is a relatively rare thing. You don't see a heck of a lot of it. Other than the fact that someone got caught. Believe it, all true remorse. Right, yeah. You don't see a lot of remorse. Well, that's true. But invariably, if it's going to have any sort of appeal whatsoever to a judge, it's going to have to involve some sort of consciousness of guilt. Groveling, as Judge Nugget would say. And if the judge starts asking about this money, and apparently the money was a pretty significant issue with the judge, there's going to be some problems with his explanation relative to this pending criminal prosecution. Is there anything he could have done? It is a problem. I did not realize the detective was sitting there. That was not a good situation. But is there anything he could have said to try to at least convey that he was trying to be remorseful without getting in trouble and trying to explain where this couple hundred thousand dollars came from? I'm sure he could have said, I'm sorry, but I don't know how much weight that would have carried with the judge. Beyond that, I don't think he could have really addressed any of the underlying conduct because certainly he was visiting the casinos using money that evidently appears to have come from robberies unless he had some other source of $200,000, which I doubt. So for those reasons, we would ask the Court to remand. Thank you. Thank you. Good morning, Your Honors. May it please the Court, Bernadette McKim for the government in this case. I'd like to also start by addressing the waiver issue. It's the government's position that Williams, by expressly acknowledging on more than one occasion during the revocation hearing that he was serving two terms of supervised release, has waived his right to pursue this issue in this appeal. But how could it be a non-waiver? Because he was dead wrong, it looks like. Now, you may not agree with that, but if we accept what Judge Segarra suggested earlier, that your pronouncement of Judge Davis is not ambiguous. It's a term. A term means a term. How could a waiver be knowing if it's just flat-out dead wrong? Well, no. The defendant at the time, the defense counsel, had not obtained the sentencing transcript. That was a choice the defense counsel made. The defense counsel decided to rely upon the presumably reliable written judgment orders, which counsel and courts routinely do. Let's rely upon the judge's question. The judge said something like, is a term of supervised release, is that right? Do you agree? And the lawyer said yes. Is that right? Oh, you're now talking about the actual sentencing proceedings. Okay. That was ahead of my waiver argument, but I'll jump to that. No, it's our position that the sentence, the oral sentence, was ambiguous under the circumstances of that case. Not the language itself that was used. You said a term twice. I mean. The judge, what happened was the judge imposed the term of imprisonment, specifically referencing the two different. Judge one. Specifically referencing the different cases, different counts of conviction, and then followed that statement immediately by saying, and upon your release from prison,  A term. A term. There's no, we're not quibbling about that. He said a term. But when a defendant is being sentenced on two different cases, that leaves it unclear as to which case does that attach to, or what counts, or does it attach to both cases. The individuals in the courtroom, somebody should have spoken up and said, can you clarify that, judge? Because the bottom line. Judge one had to impose some kind of supervised release. For these counts of conviction, Your Honor, no. But not statutorily. Okay. So it was not, he was not required to impose a period of supervised release in both cases or on any particular counts. But the bottom line was when, in this situation, where the defendant is being sentenced on two different cases, that it was unclear, that oral pronouncement left open the issue of, which case does this attach to, or does it attach to both cases. The best course of action would be if somebody in that courtroom had asked the court to clarify that. But the next step, of course, in the sentencing process is the judge has to complete the judgment orders. That was, the judge had to clarify his oral announcement in the judgment orders because he had to prepare judgment orders for two different cases. And that's exactly what he did. I don't know how it works for sure. My guess is, is anything like the way most chambers function, the judge does not prepare the judgment orders. Well, but the judge makes sure that, the chambers make sure that the judgment order is prepared. And at that point, the judge clarified his ruling, which had been ambiguous at that point. Isn't your position going to eviscerate this whole area of law? When there's a conflict between the written judgment and the oral, we go to the oral. And we see if the oral is ambiguous. Just because the judgment is conflicted, it becomes ambiguous? No, Your Honor. I don't think, I think you're getting to the point, will the exception swallow the rule? And it absolutely will not. If you look, the case law makes this perfectly clear. Only in rare circumstances, and in a small number of cases, have the courts found that there is an ambiguity. I mean, obviously there's going to be a conflict between the oral judgment and the written judgment whenever there's an argument about ambiguity. Because that's what leads to the argument in the first place. What the courts have done is they look to the record in the case. First they look at the language used. Then they look at the record, and they have determined whether or not that sentence is ambiguous based on the record. And I cited a number of cases in my brief where the courts did exactly that. Remember, in Dillon, the court actually asked for the written judgment order to determine whether or not to look at that and see if it conflicted with the judge's oral pronouncement of that sentence. It was exactly the same as it was in Eskridge. In both cases, the courts consulted the written judgment order, which is additional confirmation of the judge's intention. It's not present when the written judgment order is prepared. The defendant, my guess is, never sees the written judgment order. Maybe when the defendant gets to prison. Well, the defense counsel does, Your Honor. And they certainly – that's another very important point. If the defense counsel believed that he had only been placed on one term of supervised release at that hearing, and then the judgment order conflicted with the judge's oral ruling, the proper course of action was to appeal that issue. They certainly had an incentive to because of the fact that he would face a much greater term of imprisonment if he violated supervised release. So that is strong evidence that everybody in that courtroom and afterwards believed that he had been placed on a period of supervised release in each case. We've got a term said twice. We have a case that says – Dillon that says a term means one term. And yet you're arguing that it's ambiguous. I am arguing that the oral pronouncement itself was ambiguous under the circumstances because he was being sentenced in two cases. It was completely unclear. When those parties left the courtroom, it was unclear as to what case that attached to, what counts it attached to, what did that mean. That's when the courts may look. The judgment order may clarify an ambiguous oral pronouncement. And we're not – Now that Dillon has been decided that probably somebody would have spoken up? Well, I think now they would, yes, Your Honor, but this was 1997, 1998, so it was without the benefit of Dillon. And a term does mean a term. And I'm not excusing anybody for perhaps not speaking up at that point and saying, Judge, we're not clear on this supervised release sentence that you just imposed. That's probably what should have happened, and that would have clarified things. But the judge is permitted to – a written judgment order may clarify an oral ruling that's not complete. And that's what happened here. I understand what you're saying, but, I mean, there's no – looking at the judgment, there's nothing saying just to make clear because it was unclear at sentence. There's no sort of qualifying language in there that, hey, there was a mistake at the orally and we're correcting it now. There's nothing like that. There's nothing in that, but there's nothing in any of the other cases where they have found that there was an ambiguity and then they have said the written order controls because that better reflects what the judge's intention, given the circumstances before the court at the sentencing hearing. And if I could come back to the waiver issue. That's what you're doing. I don't want to go too far. What about the rule of lenity? Does that play any role, any part here at all? Well, the rule of lenity is an extraordinary remedy that should only be applied when after going through every other analysis and process, the court concludes that the fair thing is to give the benefit of the doubt to the defendant. I don't think we're here. I don't think that this situation comes close to justifying application of the rule of lenity because no one raised any contention about the terms of supervisory release at the time. Then we go to a revocation hearing again. The parties look at the docket entries, which reflect that he was placed on a term of supervisory release in both cases. They have the judgment orders. The probation office relies on them. The defense counsel relies on them. The defense counsel doesn't think I need to go back and get the sentencing transcript just to make sure there's not a discrepancy. Well, they wouldn't because they would presume that any infirmity in the judgment would be taken care of by a direct appeal. And that comes back to my waiver argument, which is it really is unfair to fault the judge for accepting and relying upon a position that was accepted and acknowledged by the defense. Wait a minute. Waiver is accomplished or is a product of intent. That's correct. Nobody intended. If it's anything, it's neglect, and that would result in forfeiture. I think the distinction here is, and I understand what Your Honor is saying, and certainly, for example, the Sixth Circuit is a- Can you have waiver out of ignorance? In the Sixth Circuit, they have applied. They have allowed, when a defendant expressly concedes and agrees and affirmatively takes a position, they have found waiver. I'll have trouble with that one because I- Why don't you, can you address neglect? I mean, somebody should have had this sentencing hearing transcribed way back when so everybody knew it was going on, right? Well, there was no appeal, Your Honor, so there was no need to. The defendant had cooperated and received a substantial break, so that's why the transcript had not been prepared. All right. If we even go beyond that then, even if it was neglect, we've said that exceptional circumstances are those which would result in a manifest injustice. Do we not have that here? Well, certainly, if Your Honors were to apply plain error review and we got to the second step, which was prejudice, this would be. We had said in our brief that we would agree that there would be substantial prejudice because he would have faced a 48-month term of supervised release rather than a 24-month maximum. But the point that I was trying to make about waiver is that here, the defense counsel had the opportunity to order that transcript and to review it. And they chose not to. They chose to rely on these records. And that in itself, and then to fault the judge for accepting this representation, distinguishes it from the typical plain error situation. For example, in the typical plain error situation involving a factual scenario, there's some issue on the record. The defense counsel is totally silent, doesn't say anything, doesn't raise an objection. The judge and the issue, so the issue is before the judge. The judge is aware of the issue or the fact, but takes no action on its own to intervene and take whatever course of action is appropriate. This scenario, the judge had no suggestions, no suggestion, no indication that there was any discrepancy about the term of supervised release. And that's why in this scenario it distinguishes it from your typical plain error scenario. And waiver would not be inappropriate. If I may address the Fifth Amendment argument briefly, I think. Could you answer my question when I ask your adversary? If we fight against you on the first issue, do we even need to approach this? No, Your Honor, because then there would be a resentencing. Yes. On the Fifth Amendment issue, first of all, as Your Honor noted, the Fifth Amendment right was not invoked until after the court had pronounced had informed the defendant of his appellate rights, and at that point in time he had not mentioned the word contrition. The first time that it was mentioned was after he had opposed the sentence, and then he said just to make the record complete, there's nothing in this record from which I can find contrition or remorse. That's when the judge first addressed that. And then he went on to explain that was because the evidence, even though the defendant had stipulated to the violations, the evidence against the defendant was so overwhelming that he had no choice. It was at that point that the defense counsel jumps in and says, Your Honor, I want you to know that the reason he's- Well, I want to see the sidebar. That was kind of bizarre. But no, we're not going to go to the sidebar. Well, that's right, and then she puts that information on the record, and it said that the judge responds by saying, you know, you made that decision, but the only way I could evaluate contrition on this record before me would be if the defendant addressed me, and he chose not to. The court added that the nature of the violations was so egregious that it probably wouldn't have made any difference at all, even had the defendant chose to address him. Let's assume, and this is a big hypothetical. This is not like the persistence thing. This is a really big hypothetical. Let's assume that he was really contrite. He wanted to express contrition, but that he did not want to stick his neck in the robbery news with the detective sitting there. How could he have done it? What could he have possibly said to the next judge? You know, I'm sorry. He could have said he was sorry. He could have addressed what counsel had alluded to, which was a gambling addiction, whether that would have satisfied the judge, whether the judge would then have probed further, and at that point he would have invoked his Fifth Amendment. We don't know that. But there was at least a limited thing, a limited amount of information he could provide to the court. The other important point is, even before he raised the Fifth Amendment issue, the district court did not improperly draw an inference from his silence, even before he invoked his Fifth Amendment right. There are a number of cases which address that scenario where no Fifth Amendment right is ever invoked. Instead, the courts have recognized, starting with Mitchell, which left the issue open, and then subsequent courts have said that silence can be considered as evidence of lack of remorse. And that's all the judge did here. And actually, he didn't even go that far. What he said was, there's nothing in this record from which I can find contrition or remorse. So he didn't even necessarily rely on the defendant's silence until the defendant himself brought that issue up. So in that respect, I just would note that a very similar scenario occurred in a recent, not precedential panel decision by this court, the Smith case in February of 2014, where a similar pattern of events unfolded. The defendant did not address the court. And after the court had described the sentence, it simply said that he credited the defendant for admitting to the violations, but that the defendant had nothing to say and didn't say he was sorry, and the court found that the defendant was somewhat unremorseful. And the panel of this court affirmed that, found that there was absolutely no defect in this regard. He had not invoked his Fifth Amendment right, but similar to here where he hadn't invoked his Fifth Amendment right until after the sentence was imposed. And they looked at Mitchell and the other controlling authorities and found that there was no plain error in that case. I see that my time is up, unless the court has any questions. Thank you. I have no more. Thank you. No. Anybody? Anybody, please? Just one point of clarification that, unfortunately, I didn't notice until I received the argument notice was, if you look on page 32 of the appendix, you'll see the cover page of the transcript. I'm sorry. Page 32 of the appendix. Okay. That's what you said after that. It incorrectly indicates that Judge Baleson was the sentencing judge. It was Judge Newcomer all the way through. That could have some impact. It has a lot of impact because Judge Baleson doesn't lie. Oh, yeah. All you would need to know is that Judge Baleson wasn't appointed to the court until 2002, which was some years after this. The only other two matters I'd address is, one, I don't think it would be technically appropriate for a judge to correct a sentence by simply slipping it into a judgment without acting pursuant to Rule 35, which is the mechanism that the court would have to correct something. That's your point about the defendant being present. Yes, exactly. And, secondly, I don't think proposing a rule that every single time you have a revocation hearing, in order to avoid waiver, you've got to order the sentencing transcript is necessarily a prudent course to chart. These individuals simply relied on what the probation office had prepared in the disposition report, and everybody relied on the judgment. Having to order sentencing transcripts from many years-old cases, and there's lots of revocations of supervised release, as the court knows, would be fairly costly. And I don't think it would make a difference in terms of waiver or forfeiture regarding that overall. Thank you. Thank you.